FILED

May 17, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:51 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **Ned Eugene Murphy** | ) | **Docket No.: 2015-01-0473** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 98556 2014** |
| **ADM Trucking, Inc.** | ) | |
| **Employer,** | ) | **Judge Audrey A. Headrick** |
| **And** | ) | |
| **Old Republic Insurance Company** | ) | |
| **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER
## GRANTING MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Ned Eugene Murphy, on February 23, 2016. The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Murphy is likely to prevail at a hearing on the merits. The employer, ADM Trucking, Inc., disputes that Mr. Murphy is entitled to a panel of physicians. For the reasons set forth below, the Court finds Mr. Murphy is entitled to the requested medical benefits.[1]

### History of Claim

Mr. Murphy is a fifty-three-year-old resident of Walker County, Georgia. He worked at ADM as a truck driver. Mr. Murphy allegedly injured his back on December 9, 2014, while cranking an 18-wheeler yard truck to the correct height for hooking/unhooking. He testified he used the cranking mechanism in the weeks leading up to December 9, 2014, while hooking/unhooking at a sweetener facility. Mr. Murphy reported his back injury to Darren Crow, the driver supervisor at ADM, on the morning of December 10, 2014.

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

Mr. Crow testified by deposition that Mr. Murphy notified him around the beginning of December 2014 about the following situation:

> [Mr. Murphy], a couple of weeks or so prior to that, had run into [having to lower a trailer from a truck using a crank mechanism] over at the Sweetener station. He talked about how a couple weeks before that, he was hooking up to a trailer and it was too high. And he was rolling the landing gear down and felt a little pain in his back. And he just thought it was some soreness, it would go away. And we had a little conversation about that and then went on our way. You know, a couple of weeks later or so, I get the phone call that, hey, I'm in a lot of pain because of this. I thought it would get better. I tried to work through it, but it didn't get better.

(Ex. 1 at 51-52.)

Mr. Murphy testified Mr. Crow did not offer him a choice of doctors. Instead, Mr. Murphy stated Mr. Crowe told him he would meet him at Workforce Corporate Health on Third Street in Chattanooga. Although ADM provided Mr. Murphy with three authorized visits at Workforce, the parties stipulated that ADM did not provide Mr. Murphy with a written panel of physicians.

Mr. Crow further testified that he was unaware of the statutory requirement to provide an employee with a written panel until after the incident involving Mr. Murphy. (Ex. 1 at 27.) When Mr. Murphy notified him of his injury on December 10, 2014, Mr. Crow stated he offered Mr. Murphy a verbal panel "to an extent." *Id.* at 30. He explained that ADM sent employees to two Workforce locations "98 percent of the time." *Id.* at 34. Mr. Crow stated he asked Mr. Murphy, "[w]here do you want to go?" in relation to the choice of going to one of the Workforce locations.[2] *Id.* at 30-34; 48.

On December 10, 2014, Mr. Crow met Mr. Murphy at the Workforce location on Third Street. *Id.* at 49. When Mr. Murphy saw Dr. Jayant Eldurkar at Workforce, he gave a history of hurting his low back two weeks ago while "lowering a trailer from a truck using a crank mechanism when he had a sudden onset of low back pain on the right side." (Ex. 6.) *Id.* However, he diagnosed Mr. Murphy with a lumbar sprain/strain and

---

[2] Eric Oliver, counsel for Mr. Murphy, called Mr. Crow by deposition as his first witness to impeach his testimony. Mr. Oliver sought to admit into evidence a recorded telephone conversation allegedly occurring on May 11, 2015, between Mr. Murphy and Mr. Crow, without Mr. Crow's consent or knowledge, pursuant to Tennessee Compilation Rules and Regulations 0800-02-21-.18 (2015). Defense counsel, John Huisman, objected to the recording. He argued the Rule cited refers to live testimony. Mr. Huisman also argued the recording was irrelevant since ADM stipulated it had not given Mr. Murphy a panel. Mr. Oliver argued ADM previously asserted in a pleading that Mr. Crow offered Mr. Murphy a verbal choice of physicians by allegedly telling Mr. Murphy he could see any physician of his choice. Mr. Huisman withdrew the argument that there is any legal significance regarding the manner in which Mr. Crow offered treatment to Mr. Murphy. The Court sustained the objection to the recording, and the DVD was marked for identification purposes only.

released him to return to work with restrictions. *Id.* Dr. Eldurkar also prescribed Tramadol, Skelaxin, and prednisone. *Id.*

Mr. Murphy returned to Workforce on December 16, 2014. (Ex. 6.) At the visit, Mr. Murphy stated he had "no pain today." *Id.* The physical exam indicated Mr. Murphy had full range of motion with "very mild tenderness at the right side L4-L5 region." *Id.* Dr. Eldurkar released him to return to work without restrictions. *Id.* Mr. Murphy testified he was actually not pain-free when Dr. Eldurkar discharged him on December 16, 2014. However, he stated he needed to return to work as a driver since he was single with no emergency fund.[3] After returning to work as a driver, Mr. Murphy indicated he purchased an inversion chair and driving seat to try to get relief from his back pain. (Ex. 3.)

Mr. Murphy testified he called Mr. Crow on May 11, 2015, because his pain was worse and he needed to see a doctor. Mr. Crow confirmed Mr. Murphy told him he "had really bad pain," "had never felt any better" after he was released, and "could barely walk." (Ex. 1 at 62-63.) He asked Mr. Murphy, "[d]o you want me to meet you out there towards Volkswagen [at the Workforce located there] or do you want to come downtown [to the Workforce on Third Street]?" *Id.* at 64. Mr. Crow stated he attended the appointment with Mr. Murphy even though it was not an initial appointment because five months had passed since the December incident, so he viewed it as "another first report of incident." *Id.* Mr. Murphy testified he was upset after he spoke with Mr. Crow because he felt Workforce had not done anything to help him when he previously went there.

On May 11, 2015, Mr. Murphy saw Dr. David Darden at Workforce. (Ex. 6.) Mr. Murphy complained of acute low back pain with radiation down his left leg. *Id.* Dr. Darden noted he was lying on the exam table and said he could not stand or sit due to his pain. *Id.* He also noted, "[i]t is very important to note that he did drive from the ADM facility to the clinic without apparent difficulty." Dr. Darden stated he questioned Mr. Murphy about why he was at the clinic on that day when his original injury was on December 10, 2014. *Id.* Mr. Murphy told Dr. Darden he had never been pain free, and he had bought an inversion chair for pain relief while driving. *Id.*

Dr. Darden ordered lumbar spine x-rays, which were performed during the visit. *Id.* In addition to advanced degenerative disc disease and facet arthropathy, the x-rays reference "a moderate circumferential disc bulge and associated osteophytes" as well as "a chronic, incompletely healed fracture" at L1. *Id.* Dr. Darden diagnosed Mr. Murphy with "[s]evere degenerative arthritis of the spine with sciatica L5 distribution to the left hip." *Id.* He explained to Mr. Murphy that degenerative spine disease "is generally considered a non-work-related injury." *Id.* Dr. Darden prescribed Tramadol 50 mg and

---

[3] For the one week he was on restricted duty, Mr. Murphy stated he worked in ADM's office doing paperwork.

3

Skelaxin 800 mg for back pain. *Id.* He told Mr. Murphy "not to drive any commercial vehicle while he was experiencing this acute pain and that he also should not even drive his personal vehicle." *Id.*

In his office note, Dr. Darden added the following commentary regarding Mr. Murphy's condition:

> I asked him to get dressed and stop at the front desk before he left. His exam room was in the back of the clinic and he had to walk from the front of the clinic and then out to his car and I made a point of observing him and he got dressed in an appropriate period and as he ambulated down the hall and stopped at the front desk and ambulated through the waiting room, open [sic] the heavy clinic door and more or less moseyed out to his car without any signs, symptoms or evidence of any abnormality in his gait or any pain related to his back. His gait was basically what we refer to in the south as that he just moseyed out and got in his car and drove off. This further reinforces to me that potentially he was doing a little magnification of his symptoms for whatever reason. *Id.*

During Mr. Crow's deposition, he testified he had two conversations with Dr. Darden regarding Mr. Murphy. He stated the first conversation occurred after Dr. Darden saw Mr. Murphy on May 11, 2015, and Dr. Darden told him that Mr. Murphy had "degenerative spine disease" that "was not work related." (Ex. 1 at 70.) The second conversation he had with Dr. Darden was thirty to forty minutes later. Mr. Crow testified Dr. Darden called him on his work cell phone and told, in part, the following:

> Then [Dr. Darden] said he observed [Mr. Murphy] walking down the hallway from there, noticed that at that point he was not limping or showing any gait. Walked out, opened the door, no problem. He said he stepped outside and observed him walking to his car and showed no obvious sign of distress or anything near to the extent it was when he showed up.

*Id.* at 71.

Mr. Crow stated his understanding of Dr. Darden's communication to him "was not that [Mr. Murphy] was faking an injury, that he was overexaggerating [sic] the extent of his injury that day." *Id.* at 72. He also stated Dr. Darden indicated Mr. Murphy's demeanor and behavior changed after he told him he did not have a work-related injury. *Id.* Although Mr. Crow considered Mr. Murphy a good worker, he stated the grounds for firing Mr. Murphy was "[f]or filing a claim or a false claim that the company can be held liable for." *Id.* at 81. He explained Mr. Murphy's claim evolved into a false claim "when [ADM] got word that – when [Mr. Murphy] found out it was no longer work related or a workers' comp. issue, that according to the medical professional, that the extent of his

4

injury seemed to go away to the level that it was when he showed up there." *Id.*

Dr. Darden also testified by deposition regarding his evaluation of Mr. Murphy on May 11, 2015.[4] Regarding Mr. Murphy's physical examination, he opined that:

[W]hen you put everything together with him driving himself to the clinic and sitting in the waiting room for a while until we could get him back, I thought there was a conflict in my – in the way he presented himself to me and what I knew of his history of how he got to the clinic.

(Ex. 5 at 17.)

Dr. Darden clarified he believed Mr. Murphy was in pain, but he "didn't think his pain was as severe." *Id.* at 63. He explained there is a difference between faking and magnifying symptoms. *Id.* at 77. When shown a June 1, 2015 office note from Cleveland Physician's Office for Mr. Murphy, Dr. Darden stated the physical exam indicated "patient exhibited abnormal pain behavior during the exam." *Id.* at 26. The examination note also reflected "Waddell's signs are one plus positive." *Id.* Dr. Darden indicated the findings in the June 1, 2015 office note were consistent with his findings of symptom magnification. *Id.* at 27. After reviewing the June 1, 2015 office note, Dr. Darden opined that, "[b]ased on the severe degenerative spine disease, it would still be my recommendation that he should not drive a truck that's going to probably enhance the degenerative spine disease, make it more progressive." *Id.* at 28.

During Dr. Darden's deposition, he was asked to explain how he knew that Mr. Murphy drove to Workforce without apparent difficulty as cited in his office note. *Id.* at 80. Dr. Darden responded it was "[b]ecause of knowing people that have severe back problems, the last thing they want to do is sit down and drive. *Id.* He identified "the big red flag" as the fact that Dr. Eldurkar saw Mr. Murphy and discharged him as pain-free, "[s]o in occupational medicine and workers' comp, he was over that initial thing." *Id.* at 81. Five months later on May 11, 2015, Mr. Murphy returned to Workforce with acute pain. *Id.* Dr. Darden explained that "on a workers' comp, [Mr. Murphy] should have been over that initial injury." *Id.* at 82.

Dr. Darden testified he instructed Mr. Murphy not to drive and gave him a Toradol injection (non-narcotic analgesic) and a Depo-Medrol (anti-inflammatory) injection due primarily to his pain. *Id.* at 63; 95. He also prescribed Tramadol, for pain, and Skelaxin,

---

[4] Mr. Oliver objected to the admissibility of Dr. Darden's deposition as an expert medical witness pursuant to Rules 702 and 703 of the Tennessee Rules of Civil Procedure. Consistent with his pre-hearing brief, he cited various portions of Dr. Darden's testimony to show that his opinions were not reliable and lacked trustworthiness. Mr. Huisman argued Mr. Oliver had not shown that Dr. Darden was not qualified to testify as an expert pursuant to Rule 702 and or that his opinion was unreliable or inadmissible pursuant to Rule 703. The Court overruled the objection to the admission of Dr. Darden's deposition testimony and held the issues raised by Mr. Oliver will go to the weight given to Dr. Darden's opinion.

a muscle relaxant. *Id.* at 96. On the return to work status sheet, Dr. Darden confirmed he checked "undetermined etiology" instead of work-related or not work-related because he "couldn't say 100 percent that some of [Mr. Murphy's] problems were not related to that injury." *Id.* at 92-93. After again reviewing Dr. Eldurkar's prior office note, he opined "more likely than not, it was not related to that because he got over that initial phase." *Id.* at 93. However, Dr. Darden recalled Mr. Murphy told him he had "never been pain free" and "wouldn't have bought the inversion chair and seat and most of the things for relief while driving" if he had been pain-free. *Id.* at 16.

Dr. Darden testified he received a verbal reading of Mr. Murphy's lumbar x-rays from the radiologist, Dr. Noe, whose interpretation indicated severe degenerative arthritis of the spine, or degenerative disc disease. *Id.* at 17-18. Dr. Darden described degenerative disc disease as the discs acting as shock absorbers with the spine collapsing when discs deteriorate, which can result in impingement on the nerves. *Id.* at 18. He stated degenerative disc disease exhibits itself as pain and sciatica radiculopathy with nerve impingement as the disease progresses. *Id.* at 18-19. Throughout his deposition, he reiterated that degenerative disc disease is part of the aging process. In addition to degenerative disc disease, Dr. Darden also diagnosed Mr. Murphy with "[s]ciatica L5 distribution to the left hip." *Id.* at 47. Although he acknowledged that Mr. Murphy's x-rays showed a bulging disc, he stated an x-ray does not show if a bulging disc is impinging on a nerve. *Id.* at 48-49. He stated an MRI is necessary to see nerve impingement. *Id.* at 51.

During his deposition, Dr. Darden testified regarding his opinion as to causation of degenerative disc disease. He opined, "degenerative disease in the joints, more likely than not, are not related to any kind of work-related activity, especially of the spine whether it's in the neck or the low back." *Id.* at 19-20. Dr. Darden and Mr. Oliver, counsel for Mr. Murphy, had the following exchange:

Q: And can [degenerative disc disease] be exacerbated by work-related injury?

A: Yeah. It could be exacerbated, but then they get back to their baseline.

Q: How do you get back to your baseline if the injury causes disc protrusion that is encroaching on a nerve?

A: You can't say that something like this caused a disc protrusion. What [Dr. Noe, the radiologist] is saying here is that advanced degenerative disc disease—that's an aging process. You can have an acute injury where

6

they will—herniated disc on a nerve. But they—those—generally, that does not resolve on its own. That generally requires a surgical intervention.

Q:     Do you treat disc protrusions?

A:     No.

. . .

Q:     How does anyone with degenerative disc disease ever have a work-related accident?

A:     You're asking me to theorize something that I –

Q:     Well, Mr. Murphy had degenerative disc disease in your opinion, correct?

A:     Uh-huh.

Q:     And all of us in this room have it, right?

A:     I would—to a degree, we all would have. I probably have more than you all will because I am older than you all.

Q:     Could you ever have a back injury?

A:     I could have a back injury. But whether it's work-related or not, you have to get back to the definition of what's work-related. If they have a preexisting condition, generally that is—and they have something that causes a flare-up, that is not considered work-related, I know under the current law if it's pre-existing. Because if they did not have that severe degenerative disease, then they would not have had that injury.

. . .

A:     From what I understand, the current law—now, this is what you all do and what the insurance companies do. That if you have a preexisting condition and have you have a flare-up or something, then it is not considered work-related. Because, again, if not for the preexisting condition, you would not have had that injury.

7

*Id.* at 52-56.

While acknowledging that he is not "an anatomist" or "a spine surgeon or a neurologist," Dr. Darden testified that his role is to consider an x-ray and "put everything together and then render an opinion as to whether it's work-related, not work-related, or so forth." *Id.* at 72. After reviewing Dr. Eldurkar's office note indicating, "[Mr. Murphy] said he was lowering a trailer from a truck using a crank mechanism when he had a sudden onset of low back pain on the right side," Dr. Darden's response to whether it could cause a bulging disc was that the question asked him "to theorize on something I don't know." *Id.* at 98. When asked whether he knew if Mr. Murphy was upset when he was at Workforce on May 11, 2015, Dr. Darden confirmed he appeared upset based upon "the way he was sitting and his demeanor and so forth." *Id.* at 75.

Mr. Murphy testified that, after returning to work without restrictions on December 16, 2015, he continued to have to use the crank mechanism to adjust the height of the truck for loading/unloading. He also stated he used the front door when he left Workforce on May 11, 2015, which is not a heavy door. Mr. Murphy specifically testified the door was light enough that it could open with the use of a finger. Additionally, Mr. Murphy stated he did not return to work at ADM after the May 11, 2015 visit with Dr. Darden. Instead, Mr. Murphy testified that ADM terminated him on May 26, 2015, and Mr. Crow informed him his termination was due to workers' compensation fraud.

On June 1, 2015, Mr. Murphy saw Dr. Scott Hodges, an orthopedic surgeon, at Cleveland Physician's Office. (Ex. 8.) Mr. Murphy gave a history of a work injury occurring on December 10, 2014, while manually tightening his trailer. *Id.* He stated he saw his primary care physician, who ordered a lumbar MRI, after the closure of his workers' compensation case.[5] *Id.* Mr. Murphy rated his pain level as a ten. *Id.* Dr. Hodges noted abnormal pain behavior and positive Waddell signs. *Id.* He diagnosed Mr. Murphy with lumbar degenerative disc disease, radiculopathy, and stenosis. *Id.* Dr. Hodges prescribed a Medrol pack; Robaxin, for muscle spasms; and, Neurontin, for nerve pain. *Id.* He noted, "[o]bserve for lumbar epidural steroid injections." *Id.* The lumbar MRI performed on May 19, 2015, indicated an L2-L3 disc protrusion with nerve root encroachment. (Ex. 4.)

Subsequent to his termination from ADM, Mr. Murphy testified he was involved in a motor vehicle accident (MVA) on July 27, 2015, and went to the emergency room by ambulance. However, he stated he did not receive any other treatment related to the MVA and was released that evening. Mr. Murphy acknowledged treating with three chiropractors on his own for his back condition: (1) Dr. Marlow, whom he saw four to

---

[5] On May 18, 2015, a practitioner at Chickamauga Family Practice saw Mr. Murphy and requested a lumbar MRI for his worsening lumbago. (Ex. 7.)

five times; (2) Dr. Packston, whom he saw fifteen times; and, (3) Chiro Health. He now works full-time as a driver for Tranco, but he does not currently have health insurance.

At the expedited hearing, Mr. Murphy requested that the Court either designate Dr. Hodges as his authorized physician or order ADM to provide him with a panel of physicians. Mr. Murphy argued ADM accepted his December 10, 2014 report of a back injury as compensable, but it failed to comply with the statutory requirement of providing him with a panel of physicians and instead verbally required him to go to Workforce. After ADM's verbal directive requiring Mr. Murphy to go to Workforce, it denied his claim after that physician stated it was not work-related. He cited *McCord v. Advantage Human Resourcing, infra*, and *Buchanan v. Carlex Glass Co., infra,* to argue that a lesser burden of proof is required at the expedited hearing level than for a compensation hearing. Mr. Murphy also cited *Valentine v. Dollar General*, No. 2015-06-0841, 2016 TN Wrk. Comp. LEXIS 2, at *8-*9 (Tenn. Ct. Workers' Comp. Cl. Jan. 4, 2016), as being instructive to support his position that he provided sufficient evidence for the Court to conclude he is entitled to continue treating with Dr. Hodges or, in the alternative, be provided with a panel of physicians.

ADM asked the Court to deny Mr. Murphy's request in its entirety. Mr. Murphy sustained a back injury or strain in December 2014 as documented by Dr. Eldurkar's records. On December 16, 2014, Mr. Murphy stated he was no longer in pain, and Dr. Eldurkar released him to return to work. The panel issue did not resurface until October 2015 after Mr. Murphy's termination. In May 2015, Dr. Darden diagnosed him with degenerative disc disease and opined his current symptoms were not work-related. Dr. Darden also observed and documented multiple signs of symptom magnification. Physician's Assistant Pulver in Dr. Hodges' office also confirmed and observed signs of symptom magnification. Instead of returning to Dr. Hodges for follow-up, Mr. Murphy was in an MVA and sought treatment with chiropractors. The burden is to show Mr. Murphy is likely to prevail on a hearing on the merits, but the evidence shows otherwise. Therefore, ADM argued Mr. Murphy's current condition is not work-related, and he is not entitled to a panel.

Mr. Murphy filed a Petition for Benefit Determination seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the mediator filed a Dispute Certification Notice on February 23, 2016. Mr. Murphy filed a Request for Expedited Hearing on February 23, 2016. This Court heard the matter on April 21, 2016.

### Findings of Fact and Conclusions of Law

In Mr. Murphy's workers' compensation claim, he has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). However, Mr. Murphy is not required to prove every element of his claim by

a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Mr. Murphy has the burden to come forward with sufficient evidence from which the trial court can determine that Mr. Murphy is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

During Mr. Murphy's expedited hearing, it was undisputed that he sustained a work-related sprain or strain due to using a cranking mechanism a couple of weeks prior to December 9, 2014, at a sweetener facility. The parties also stipulated that ADM did not provide Mr. Murphy with a panel of physicians after he reported on December 10, 2014, that he had a work-related back injury. Instead, Mr. Murphy credibly testified Mr. Crow, the driver supervisor at ADM, told him he would meet him at Workforce on Third Street in Chattanooga. Mr. Murphy's assertion is consistent with the deposition testimony of Mr. Crow. A thorough reading of Mr. Crow's deposition in its entirety indicates he offered Mr. Murphy a verbal choice between going to the Workforce at Volkswagen or the Workforce on Third Street. (Ex. 1.)

The Workers' Compensation Law required ADM to offer Mr. Murphy a panel in writing with a choice of three physicians. *See* Tenn. Code Ann. § 50-6-204(a)(3)(D)(i)-(ii) (2015). However, ADM verbally directed Mr. Murphy to one medical provider. In an effort to return to work as a driver without restrictions, Mr. Murphy testified on December 16, 2014, he told Dr. Eldurkar he had no pain on that day because he needed to return to work as a driver for financial reasons. He testified he subsequently purchased an inversion chair and driving seat to help alleviate his back pain. (Ex. 3.) Mr. Murphy also testified his job required him to use the cranking mechanism at the sweetener facility after December 16, 2014.

The testimony of Mr. Murphy and Mr. Crow are consistent as to what occurred when Mr. Murphy called Mr. Crow on May 11, 2015. Mr. Murphy reported his back pain was worse and never improved. Mr. Crow asked Mr. Murphy, "[d]o you want me to meet you out there towards Volkswagen [at the Workforce located there] or do you want to come downtown [to the Workforce on Third Street]?" (Ex. 1 at 64.) On May 11, 2015, Mr. Murphy saw Dr. Darden at Workforce. This Court overruled the objection to the admission of Dr. Darden's medical deposition because it did not find that Dr. Darden was disqualified to testify as an expert witness pursuant to Rules 702 and 703 of the Tennessee Rules of Civil Procedure. However, after carefully reviewing and considering Dr. Darden's testimony, this Court gives little weight to his testimony and medical

10

opinions.

Dr. Darden's opinion that degenerative disc disease is rarely, if ever, work-related, because it is a pre-existing condition is based upon a faulty premise. If an injured worker offers evidence medical proof within a reasonable of medical certainty "that the aggravation [of a pre-existing condition] arose primarily out of and in the course and cope of employment," the injury may be compensable under the Workers' Compensation Law. *See* Tenn. Code Ann. § 50-6-102(14)(A) (2015). Additionally, the Workers' Compensation Appeals Board clarified that "an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation." *Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015). Further, the fact that Dr. Darden, and Dr. Hodge's physician's assistant, noted symptom magnification regarding Mr. Murphy's pain level does not negate his statutory entitlement to a panel of physicians.[6]

After ADM denied Mr. Murphy's claim based upon Dr. Darden's opinion on May 11, 2015, he sought treatment on his own at Chickamauga Family Practice on May 18, 2015, and with Dr. Scott Hodges on June 1, 2015. Although the May 19, 2015 MRI indicated an L2-L3 disc protrusion with nerve root encroachment, the records are silent as to whether there is a causal relationship between Mr. Murphy's back condition and his work injury on or about December 9, 2014. (Ex. 4, 7, and 8.) However, the medical evidence presented supports Mr. Murphy's allegation that he experienced a sudden onset of low back pain while using a cranking mechanism, which resulted in a back sprain or strain. There is no medical proof establishing otherwise. Therefore, as matter of law, Mr. Murphy has come forward with sufficient evidence from which this Court concludes he is likely to prevail at a hearing on the merits on the issue of entitlement to a panel of physicians.

**IT IS, THEREFORE, ORDERED** as follows:

1. ADM or its workers' compensation carrier shall provide Mr. Murphy with a panel of orthopedic surgeons compliant with Tennessee Code Annotated section 50-6-204(a)(3) (2015) for evaluation and/or treatment of the injury of December 9, 2014. Mr. Murphy or the providers shall furnish ADM, or its carrier, bills for the charges incurred for compensable care, and ADM or its carrier shall timely pay said charges.

2. This matter is set for an Initial (Scheduling) Hearing on July 20, 2016, at 10:00 a.m. Eastern Time.

---

[6] Although Mr. Murphy briefly testified regarding a motor vehicle accident and chiropractic treatment, the parties did not seek to introduce those records into evidence.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 17th day of May, 2016.**

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

12

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Deposition of Darren Crow, filed April 8, 2016;
2. Affidavit of Ned E. Murphy, filed February 23, 2016;
3. Photographs (2) of inversion chair and driving seat;
4. Medical records of John Nelson, M.D., filed April 8, 2016;
5. Deposition of David D. Darden, DO, MPH, NRCME, filed April 8, 2016;
6. Medical records of Workforce Corporate Health;
7. Medical records of Chickamauga Family Practice, filed April 8, 2016; and,
8. Medical records of Scott D. Hodges, D.O.

Marked for Identification Purposes Only:
1. DVD recording of telephone conversation between Darren Crow and Ned Murphy on May 11, 2015

Technical record:[7]
1. Petition for Benefit Determination, filed October 29, 2015;
2. Dispute Certification Notice, filed February 23, 2016;
3. Request for Expedited Hearing, filed February 23, 2016;
4. Motion to Take Depositions, filed February 23, 2016;
5. Objection to Request for Expedited Hearing/Ruling, filed March 1, 2016;
6. Objection to Motion for Depositions, filed March 1, 2016;
7. Order for Expedited Hearing, issued March 9, 2016;
8. Order Granting Motion to Take Depositions, issued March 9, 2016;
9. Notice of Scheduled Hearing, filed April 7, 2016;
10. Employee's Evidence Table of Contents, filed April 8, 2016;
11. Employer's Evidence Table of Contents, filed April 8, 2016;
12. Employer's Pre-Hearing Brief, filed April 8, 2016; and,
13. Expedited Hearing Brief on Behalf of Ned Murphy, filed April 12, 2016.

---

[7] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 17th day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Eric J. Oliver, Employee's Attorney | | | X | eoliver@lewisoliver.com |
| John G. Huisman, Employer's Attorney | | | X | john@huismanlawfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

15